NORTHWESTERN LIFE INSURANCE COMPANY, Appellee,

v.

ROGERS et al., Appellees; Kvitko et al., Appellants.

[Cite as *Northwestern Life Ins. Co. v. Rogers* (1989), 61 Ohio App.3d 506.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–840.

Decided March 9, 1989.

508

*Bricker & Eckler* and *Charles F. Freiburger,* for appellee Northwestern Life Insurance Company.

*Geoffry V. Case,* for appellants.

*John C. Nemeth,* for third-party defendant Stephen Martin.

*John T. Corrigan,* prosecuting attorney, *Patrick J. Murphy* and *Michael Pokorny,* for third-party defendant East Cleveland Public Library.

HOOPER, Judge.

Defendants and third-party plaintiffs, Brian and Carrie Kvitko ("Kvitkos"), appeal the judgment of the Franklin County Court of Common Pleas, which granted summary judgment to third-party defendant attorney Stephen Martin; overruled the motion for summary judgment of appellants; and overruled

appellants' motion for attorney fees as to third-party defendant East Cleveland Public Library ("Library").

The facts leading to this appeal arose from a foreclosure action instituted by Northwestern National Life Insurance Company ("Northwestern") against James Rogers and appellants.

On December 23, 1986, the Kvitkos entered into a real estate contract to purchase the residential property of defendant James Rogers and wife, located at 234 Campusview in Worthington, Ohio. It was known by the Kvitkos that Rogers was involved in serious criminal legal problems which could possibly result in some future impediment to the real estate closing. Although the Kvitkos had used Martin's services several times in previous real estate transactions, at the time of entering into the real estate contract, the Kvitkos had not retained Martin to represent them in the transaction. Martin was not retained until sometime after the contract for purchase was entered into and the Kvitkos had applied for and received mortgage loan financing and the approval of the loan financing received. The closing on the real property occurred on January 28, 1987. At the time Martin was retained as counsel for the Kvitkos he also had an interest in the Minnesota Title Agency North, and during previous transactions with the Kvitkos had advised them of potential conflicts of interest between his position with the title insurance agency and as a real estate attorney.

Subsequent to the real estate closing, the Franklin County Auditor refused to transfer title from Rogers to the Kvitkos, ostensibly for the reason that the Library had an "attachment order" which precluded the transfer. It must be noted that the Library failed to convert this so-called order into a valid lien and the Franklin County Court of Common Pleas, on December 4, 1987, so ruled in its entry granting judgment against the Library. Subsequently, on April 4, 1988, Northwestern dismissed its complaint in foreclosure against the subject real property. Ultimately, on December 16, 1988, the Franklin County Court of Common Pleas, by entry, ordered the Recorder and the Auditor of Franklin County to record the Kvitkos' deed.

The primary factor, which has provided the basis for this prolonged litigation, was the issuance of the "pre-judgment attachment order" by the Cuyahoga County Court of Common Pleas to the Library in its action against Rogers, but it is significant that this attachment order was never recorded and was not of record in Franklin County, nor was it converted into a valid lien so as to give notice to prospective title holders of the property, the situs of the real property being in Franklin County. As previously stated, this "order" was ultimately found to be not an impediment to the title of the Kvitkos.

Appellants have set forth the following assignments of error:

"1. The trial court erred when it sustained the defendant-attorney's motion for summary judgment of dismissal of professional malpractice claims against him, upon the basis that a client-plaintiff's showing of an attorney's violation of conflict-of-interest prohibitions of the Code of Professional Responsibility and other applicable law is not sufficient to create a genuine issue of material fact upon the question of professional malpractice by that attorney.

"2. The trial court erred when it overruled the plaintiff-clients' motion for partial summary judgment upon the issue of the defendant-attorney's liability for professional malpractice, when the court failed to rule that an attorney's clear violation of conflict-of-interest prohibitions of the Code of Professional Responsibility and other applicable law is attorney malpractice per se.

"3. Upon the prevailing party's motion, pursuant to Civil Rule 37(C), for recovery of attorney fees from the losing party for its failure to admit requests for admissions later proved by the prevailing party, the trial court erred in overruling such motion when the court failed to find that the losing party showed 'good reason' for its failure to admit and the losing party in fact did not show any such good reason."

Since the first and second assignments of error are addressed to the same legal principles, they will be considered together. As to the first and second assignments of error, the Kvitkos urge this court, in an attorney's professional malpractice action, to adopt a malpractice *per se* standard upon a showing of an attorney's alleged violation of conflict of interest prohibitions contained in the Code of Professional Responsibility. The Kvitkos further urge this court to hold that evidence of an expert on behalf of the client alleging the malpractice as to the applicable standards of professional care and practice is not required or necessary upon a simple allegation of conflict of interest.

This court does not agree.

 Initially, this court would note that Civ.R. 56(C) provides those materials which the trial court shall consider when addressing a motion for summary judgment are the " * * * pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any * * *." The only materials contained in the record of this case properly before the court were the affidavits of Brian Kvitko and Martin. Copies of articles written by attorneys specializing in attorney misconduct are not evidence or contemplated by Civ.R. 56(C) as evidentiary materials. This court must presume, absent an express finding by the trial court, that the affidavits, being those proper evidentiary items, were the sole items considered in arriving at the decision on summary judgment.

The affidavits indicate that Martin was an experienced real estate attorney and, additionally, was a principal in the Minnesota Title Agency North, an insurer in this case, and the source of the alleged conflict of interest. Martin was retained to represent the Kvitkos at the closing on the real estate. Further, Martin did not enter into the purchase negotiations of the subject property, subsequent to the financial negotiations and the signing of the contract for purchase and prior to the closing. Further, the affidavits reveal Martin followed and complied with the standards for determining evidence of title as adopted by the Columbus Board of Realtors and the Columbus Bar Association. It is further clear from the record that there was no negligence on the part of Martin leading up to the refusal of the Franklin County Auditor to transfer the title of the captioned premises to the Kvitkos. It is not disputed that the prejudgment attachment order was not of record, nor was notice given to potential purchasers of the property through the proper channels available to title abstractors.

█ As this court has held in *McIntire v. Scott* (Mar. 27, 1986), No. 85AP-762, unreported, 1986 WL 3714, at * 2, the four elements of a legal malpractice claim are the following:

" '1. There was an attorney-client relationship.

" '2. There were sufficient facts to show that the attorney's alleged misconduct caused the plaintiff's injury.

" '3. The attorney had breached his duty to provide competent legal services.

" '4. The damages which the plaintiff sustained were the proximate result of the attorney's alleged misconduct.' "

█ In reviewing the facts of this case, there is no question that there was an attorney-client relationship between the Kvitkos and Martin. This relationship arose prior to the real estate closing and was terminated immediately after the closing when Martin realized a conflict of interest existed. This court, however, can find no facts which show that Martin's alleged conflict of interest caused any injury to the Kvitkos, nor are there any facts before the court that Martin had breached his duty to provide competent legal services. The sole complaint of the Kvitkos is that, because of a relationship between Martin and the title insurance company, there was a conflict of interest cognizable under the Code of Professional Responsibility which constituted malpractice *per se* and, therefore, results in legal malpractice liability.

█ Finally, and of equal importance, there are no damages alleged which the Kvitkos sustained which were the proximate result of any misconduct on the part of Martin. Martin's affidavit is unrefuted when he avers that

the Kvitkos had knowledge of his association with the title insurance company and, further, that he had handled legal matters on at least twenty prior occasions for the Kvitkos, including several real estate transactions. The sharing of common office by the title agency and Martin, the Kvitkos having used Martin and the title agency on prior occasions, certainly rises to the level of constructive knowledge on the part of the Kvitkos of the relationship between Martin and the title company. Even if, after the prior relationship between the parties was revealed, it could be inferred that the Kvitkos still did not have knowledge or give their consent to this relationship, the fact that Martin immediately withdrew as counsel upon finding that in fact there was a title problem did not prejudice the Kvitkos or contribute to any alleged damages they may have incurred.

Assignments of Error Nos. 1 and 2, simply stated, would have this court adopt a malpractice *per se* standard of liability upon a showing of any alleged noncompliance with the Code of Professional Responsibility, and without the necessity of plaintiff providing expert evidence in support of the malpractice allegation. It is clear that there can be instances where noncompliance with the Code of Professional Responsibility does not result in malpractice. Before legal malpractice can occur, the client must have incurred damages which were directly and proximately caused by the attorney's malpractice. Because of the very nature and complexity of the Code of Professional Responsibility and the conduct of legal matters, expert testimony is required to support the allegations except in those cases which are so patently obvious as to negate this requirement. While there may be cases where an attorney's misconduct is obvious from the record and was the direct and proximate causation of the injuries received by the client so as to obviate the need for expert testimony, this case does not fall within that category. The alleged malpractice is unsupported by any expert testimony on the part of the Kvitkos and this court would find that any breach of the standard of care required by the rules of the Code of Professional Responsibility, so as to result in lawyer malpractice, was not so obvious that it could be determined by the trial court when addressing the motion for summary judgment. Expert testimony is required so that the trier of fact does not have to speculate on the standard of care, particularly in a complex case involving real estate transactions which are normally not within the realm of understanding of the layman.

This court finds that the first and second assignments of error are not well-taken and are overruled.

The third assignment of error is addressed to the failure of the trial court to order attorney fees to the Kvitkos upon the failure of the Library to

admit request for admissions later proved by the prevailing party. Civ.R. 37(C) is very clear in its mandates. It provides:

"If a party, after being served with a request for admission under Rule 36, fails to admit the genuineness of any documents or the truth of any matter as requested, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. Unless the request had been held objectionable under Rule 36(A) or the court finds that there was good reason for the failure to admit or that the admission sought was of no substantial importance, the order *shall be made.*" (Emphasis added.)

The record of this case indicates that the Library denied the request for admissions and later the Kvitkos proved each of the denied requests. A motion was properly made for attorney fees which was denied by the court. This court has searched the record and finds that there has been no good reason provided to the court for the failure of the Library to admit the request for admissions. In *Itskin v. Restaurant Food Supply Co.* (1982), 7 Ohio App.3d 127, at 130, 7 OBR 161, at 163, 454 N.E.2d 583, at 587, this court held that:

" * * * [T]he burden was upon third-party defendant to demonstrate that there was a good reason for the failure to admit * * *."

There is nothing in this record to indicate that the Library provided *any* reason for not complying with the request for admissions. Accordingly, this court would find that the trial court erred in not granting the attorney fees and expenses as requested. Accordingly, this assignment of error is sustained.

For the foregoing reasons, the first and second assignments of error are overruled, and the third assignment of error is sustained, and this cause is remanded to the Franklin County Court of Common Pleas for the determination of the attorney fees as contemplated under Civ.R. 37.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

McCormac, P.J., and Young, J., concur.

James J. Hooper, J., of the Miami County Court of Common Pleas, sitting by assignment.