[Cite as *Jackson v. Jackson*, 2015-Ohio-3825.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| BRIAN R. JACKSON, | : | **O P I N I O N** |
| Plaintiff-Appellant/ Cross-Appellee, | : | |
| | : | **CASE NOS. 2013-L-035** |
| - vs - | : | **and 2013-L-037** |
| | : | |
| ROBIN S. JACKSON, | : | |
| Defendant-Appellee/ Cross-Appellant. | : | |

Appeals from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 07 DR 000384.

Judgment: Affirmed.


*James R. Skirbunt* and *Sharon A. Skirbunt,* Skirbunt & Skirbunt Co., L.P.A., One Cleveland Center, Suite 3150, 1375 East Ninth Street, Cleveland, OH 44114 (For Plaintiff-Appellant/Cross-Appellee).

*Joseph G. Stafford,* Stafford Law Co., L.P.A., 55 Erieview Plaza, 5th Floor, Cleveland, OH 44115 (For Defendant-Appellee/Cross-Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Brian R. Jackson, appeals the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, adopting the decision of its magistrates on Brian's motion to modify spousal support and child support. Appellee, Robin S. Jackson, cross-appeals the same judgment. The principal issue in this appeal is whether the trial court had jurisdiction to modify the court's prior order of spousal

support.  This is the second appeal arising out of the Jacksons' divorce.  For the reasons that follow, we affirm.

**{¶2}**  The Jacksons were married in 1996, and have one son who was born in 1998.  Brian was an executive with Lincoln Electric.  Robin did not work during the marriage.  Brian filed for divorce in 2007.  Trial was held on July 13, 2009; October 9, 2009; and November 30, 2009, before a magistrate.  The parties eventually resolved most issues and, at the final hearing on November 30, 2009, they entered an agreement regarding the remaining issues involving child support, spousal support, and Brian's bonus and stock options.  On that date, Brian's counsel read the agreement into the record.  On May 10, 2010, the trial court journalized the divorce decree incorporating the parties' in-court agreement.

**{¶3}**  According to the  agreement, Brian was to continue paying temporary spousal support until December 31, 2009.  Effective January 1, 2010, he was to pay spousal support for 48 months at $4,700 per month.  Brian's retirement plans subject to ERISA were to be divided equally by QDROs.  His various other retirement benefits, including various stock options, were also to be divided equally.  Child support was set at $1,250 per month, a 38% downward deviation, to which the parties agreed, as their son spent half of his time with Brian, who was also the child's residential parent for school purposes.  It was contemplated in the agreement that Brian would retire in January 2011.  He suffers from a severe vision impairment.  The trial court retained jurisdiction to modify support.

**{¶4}**  The trial court ordered Robin's counsel to prepare the QDROs regarding Brian's defined benefit plan with Lincoln Electric and his 401(k) plan.  He failed to do so.

2

Thus, Brian's counsel prepared proposed QDROs and submitted them to Robin's counsel for approval on June 15, 2010. Robin filed various objections with the trial court to the QDROs. On January 5, 2011, the trial court entered two judgments adopting Brian's proposed QDROs. Robin appealed, and on February 21, 2012, this court affirmed the trial court's judgment in *Jackson v. Jackson*, 11th Dist. Lake Nos. 2011-L-016 and 2011-L-017, 2012-Ohio-662, ¶23, 46.

{¶5} On March 5, 2011, Brian retired from Lincoln Electric. A few days later, he filed a motion to modify spousal support and child support. Trial was held before two magistrates on October 3, 2011; May 30, 2012; and May 31, 2012, on Brian's motion to modify. On August 29, 2012, the magistrates issued an exhaustive, 23-page decision ruling on Brian's motion to modify. Initially, the magistrates noted the parties had stipulated Brian was owed a credit of $39,800 against his support arrearages, and the magistrates ordered the Lake County Child Support Enforcement Agency ("CSEA") to adjust its records accordingly. This credit originated from Brian's bankruptcy, which occurred during the divorce proceedings. This was the amount of money Brian paid to the bankruptcy trustee to be paid toward his support arrearages as a priority claim.

{¶6} The magistrates further concluded that Brian was entitled to a modification of both spousal support and child support. They conducted a detailed analysis of the reduction in Brian's income due to his retirement. They concluded his retirement was a "triggering event," allowing for modification of his support obligations. They reduced his spousal support obligation from $4,700 per month to $3,300 per month, effective March 9, 2011. They further reduced it to $1,100 per month, effective January 1, 2012, until the end of the 48-month-spousal-support term set forth in the divorce decree. Brian's

3

child-support obligation was also reduced, taking into consideration Brian's lower income and applying the previously-established 38% downward deviation to the reduced child-support calculation.

{¶7} Both parties filed objections to the magistrates' decision. By its judgment, filed March 29, 2013, after making a detailed analysis of the parties' objections, the trial court adopted the magistrates' decision. Brian timely filed an appeal, assigning two errors, and Robin filed a cross-appeal, assigning seven errors.

{¶8} For Brian's first assigned error, he alleges:

{¶9} "The trial court erred when it did not specifically order Lake County CSEA to credit [Brian] with $39,800.00 [Robin] received from the Bankruptcy Trustee in satisfaction of [Robin's] priority bankruptcy claim for support."

{¶10} A trial court's decision to adopt, reject, or modify a magistrate's decision is reviewed for an abuse of discretion. *In re Gochneaur*, 11th Dist. Ashtabula No. 2007-A-0089, 2008-Ohio-3987, ¶16. This court has stated that the term "abuse of discretion" is one of art, connoting judgment exercised by a court, which does not comport with reason or the record. *Gaul v. Gaul*, 11th Dist. Ashtabula No. 2009-A-0011, 2010-Ohio-2156, ¶24.

{¶11} Brian argues the trial court erred in not ordering CSEA to credit him with the $39,800 Robin received from the bankruptcy trustee in satisfaction of Brian's support arrearages. However, the magistrates and, by adoption of the magistrates' decision, the trial court decided that Brian was to receive a credit in this amount against his support arrearages and ordered CSEA to adjust its records accordingly. In fact, Brian concedes that by adopting the magistrates' decision, the trial court ordered CSEA

4

to credit him with $39,800. The trial court ordered CSEA to make an adjustment in its calculation of the support arrearages; prepare an account summary; and submit it to the parties and their counsel. Thus, contrary to Brian's argument, there is no realistic concern he will have to pay this amount twice if the court does not enter another order repeating the court's original order that CSEA adjust its records to give him credit for this amount.

{¶12} Since the trial court adopted the magistrates' decision, which includes the order Brian seeks, he has failed to demonstrate an abuse its discretion by the trial court.

{¶13} Brian's first assignment of error is overruled.

{¶14} For his second assignment of error, Brian alleges:

{¶15} "The trial court erred by including stock option proceeds as income attributable to [Brian] when those stock options were property of [Robin], who received the proceeds from exercise of the options."

{¶16} Brian argues the trial court abused its discretion by including the proceeds he realized from his exercise of Lincoln Electric stock options in 2011 in his 2011 gross income for support purposes because he turned over the proceeds, i.e., $56,137, to Robin. He asks that the proceeds be allocated to Robin's income, rather than to his.

{¶17} Brian argues the proceeds from his exercise of these stock options constituted "nonrecurring" income and thus were not includable as part of his gross income for support purposes. "Nonrecurring * * * income * * *' means an income * * * item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis." R.C.

3119.01(C)(8). Such income is not part of gross income for support purposes. R.C. 3119.01(C)(7)(e).

{¶18} In support of its finding that these proceeds were part of Brian's gross income, the trial court noted that the stock options accrued to Brian over the years and were exercised by him in multiple years prior to 2011. Moreover, Brian exercised other stock options in 2012. Thus, Brian received such income in more than three years.

{¶19} In these circumstances, the trial court did not abuse its discretion in adopting the magistrates' decision to include the proceeds realized by Brian from his 2011 exercise of stock options in his 2011 gross income.

{¶20} Brian's second assignment of error is overruled.

{¶21} As noted above, for her cross-appeal, Robin asserts seven assignments of error. She consolidates her first three assignments of error for argument and, thus, we shall review them together. They allege:

{¶22} "[1.] The trial court erred and/or abused its discretion in its analysis relating to spousal support, in finding the court had jurisdiction to modify the spousal support, and its modification of spousal support.

{¶23} "[2.] The trial court erred and/or abused its discretion in its analysis relating to the circumstances known at the time of the divorce, the circumstances in regard to the parties' settlement, and its analysis of *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433 (2009), and Ohio case law in regard to a voluntary retirement, especially one that was contemplated at the time of the prior support order.

{¶24} "[3.] The trial court erred and/or abused its discretion by denying [Robin's] motion to dismiss."

**{¶25}** Robin argues the trial court did not have jurisdiction to modify the provision in the parties' in-court agreement that Brian would pay her $4,700 per month for four years in spousal support, effective January 1, 2010. As grounds, she argues that Brian failed to prove the second element of the *Mandelbaum* test because the parties contemplated Brian's retirement at the time they entered their agreement.

**{¶26}** The Supreme Court of Ohio in *Mandelbaum, supra*, held:

**{¶27}** A trial court lacks jurisdiction to modify a prior order of spousal support unless the decree of the court expressly reserved jurisdiction to make the modification and unless the court finds (1) that a substantial change in circumstances has occurred and (2) that *the change was not contemplated at the time of the original decree.* (Emphasis added.) *Mandelbaum* at second paragraph of the syllabus.

**{¶28}** The term "contemplated" in the *Mandelbaum* test has been defined to mean that the matter was "taken into account" by the parties or the court in resolving an issue. *Piliero v. Piliero,* 10th Dist. Franklin No. 10AP-1142, 2012-Ohio-1153, ¶18. Here, Brian's retirement was contemplated by the parties in reaching their settlement agreement because the agreement itself provided it was anticipated Brian would retire in one year, i.e., in January 2011. Thus, the parties clearly took Brian's retirement into account in settling the spousal support issue.

**{¶29}** However, while Brian's retirement was obviously contemplated by the parties, the trial court found that Brian's *retirement income* was not taken into account because that income was not fully determinable at the time of their separation

7

agreement. In support, the court noted that Brian's retirement income included a Supplemental Executive Retirement Plan ("SERP") payment, which was available to some Lincoln Electric executives on retirement, but which was discretionary and not guaranteed as of the time of the parties' agreement. Also, Brian's retirement income included a substantial social security disability payment of which he was unaware at the time of the agreement.

{¶30} The trial court's finding that Brian's retirement income was not contemplated by the parties is supported by *Piliero, supra,* in which the Tenth District stated:

{¶31} Although both the trial court and the parties may have been aware of appellant's probable future cost-of-living raises and anticipated the eventual termination of child support, neither the trial court nor the parties "contemplated," or took into account, these factors in fashioning the spousal support award in the original decree because *the extent of change over a significant period of time is not ascertainable.* Instead, the trial court chose to retain jurisdiction to reconsider and modify, if necessary, the spousal support amount as these circumstances presented themselves in the future. (Emphasis added.) *Id.* at ¶18.

{¶32} In *Piliero*, the Tenth District stated that even if a divorce decree identifies a specific change of circumstances, such as a party's bankruptcy, loss of job, poor health, or the termination of child support, the consequences of such change will allow for a

8

modification of spousal support *if such consequences* were not ascertainable at the time of the original decree. *Id.* at ¶9-10, 12.

**{¶33}** While Brian may not have been aware of the exact value of his retirement income when he entered the agreement, Lincoln Electric informed him of his retirement benefits and their estimated value two years before the agreement. Moreover, he was aware of his vision problems before he entered the agreement, and they have apparently not worsened since that time. It therefore appears that the parties also took Brian's retirement income into account in reaching their settlement agreement.

**{¶34}** However, our standard of review regarding whether Brian's retirement income was contemplated is limited. In *Piliero*, *supra*, the Tenth District stated that "review of such a determination as to whether something was contemplated at the time of divorce would be subject to an abuse of discretion standard." *Id.* at ¶19, citing *Hines v. Hines*, 3d Dist. Marion No. 9-10-15, 2010-Ohio-4807, ¶18, and *Ballas v. Ballas,* 7th Dist. Mahoning No. 08 MA 166, 2009-Ohio-4965*,* ¶44.

**{¶35}** Thus, while the trial court's finding that Brian's retirement income was not contemplated is subject to debate, since the trial court, in adopting the magistrates' decision, provided reasons for this finding, which are supported by the record, our standard of review does not warrant reversal of the modification of spousal support.

**{¶36}** Robin also argues that Brian was not entitled to a modification of spousal support because he voluntarily retired early to defeat his spousal support obligation. However, we agree with the trial court's finding that this argument is defeated by the determination of the Social Security Administration following Brian's retirement that he is disabled. Further, Robin knew about Brian's planned retirement when the settlement

9

and divorce decree were entered, and Brian retired after a lengthy career at Lincoln Electric at a point when his retirement benefits were available to him. *Allan v. Allan*, 6th Dist. Sandusky Nos. S-12-017 and S-12-023, 2013-Ohio-1475, ¶20. Moreover, there is no evidence in the record that Brian retired simply to defeat his spousal-support obligation. Thus, the trial court did not abuse its discretion in rejecting this argument.

{¶37} We therefore hold the trial court did not abuse its discretion in adopting the magistrates' decision finding Brian was entitled to a modification of spousal support.

{¶38} Robin's first, second, and third assignments of error are overruled.

{¶39} For her fourth assignment of error, Robin alleges:

{¶40} "The trial court erred and/or abused its discretion in the factual finding relating to the parties' incomes and circumstances, and in regard to the retirement benefits."

{¶41} Robin argues the magistrates and the trial court erred in adding to her income for purposes of calculating child and spousal support her half of Brian's various retirement benefits, which, she argued, she has not received. Aside from those funds subject to the two QDROs, Brian has various other retirement benefits from Lincoln Electric that are non-qualified. According to the parties' in-court agreement, all of Brian's retirement benefits were to be divided equally between the parties.

{¶42} Robin argues that, because Brian has failed to pay her one-half of his retirement benefits as ordered, the magistrates and the trial court should not have imputed the income from her half of these benefits to her, but, instead, should have imputed it to Brian to recalculate spousal support and child support. However, in determining spousal support, the trial court is required to consider the income of the

10

parties from all sources, including income derived from property awarded in a property division. R.C. 3105.18. Robin was awarded one-half of Brian's retirement assets as part of her property division in the divorce decree. Thus, the trial court did not abuse its discretion in adopting the magistrates' decision imputing this income to Robin.

{¶43} Further, in the trial court's March 29, 2013 judgment, the court found the magistrates' calculations as to what Brain was paid and what he actually paid to Robin are accurate. However, the court found that Brian failed to follow the court's orders as to payouts owed to Robin from annual bonuses, the SERP plan, and spousal support. The trial court found:

{¶44} Pursuant to CSEA's audit, the total child support and spousal support arrearage [Brian] owes [Robin] as of February 28, 2013 is the sum of $172,906.34, exclusive of processing fees. Frankly, the arrearage due [Robin] at the time of trial is shocking, along with [Brian's] unilateral decision-making after his retirement in parceling out what he determined was due [Robin] as and for property division in the decree of divorce filed May 10, 2010.

{¶45} As a result, the trial court, in adopting the magistrates' decision, entered an order requiring Brian to pay his enormous arrearages at a set rate. Thus, the retirement benefits owed to Robin will be paid to her. For this additional reason, Robin has not demonstrated the trial court abused its discretion in adopting the magistrates' decision regarding Brian's retirement benefits.

{¶46} Robin also argues the trial court erred in not attributing the social security benefits paid to the Jacksons' son due to Brian's disability to Brian's income for child

11

support purposes. However, contrary to Robin's argument, the magistrates' decision, approved by the trial court, does, in fact, include the derivative social security benefits received by the parties' son as part of Brian's income for child support purposes.

{¶47} Robin's fourth assignment of error is overruled.

{¶48} For her fifth assigned error, Robin contends:

{¶49} "The trial court erred and/or abused its discretion in regard to the determination and calculation of child support, and the tax dependency exemptions."

{¶50} Robin argues the magistrates and, by adoption of their decision, the trial court abused their discretion in applying a downward deviation in calculating Brian's child support because the parties never agreed to a downward deviation based on extended parenting time.

{¶51} R.C. 3119.22 mandates that when a deviation in the amount of child support is ordered, the trial court must make "findings of fact supporting that determination." R.C. 3119.23 sets forth factors a trial court may consider when granting such a deviation. These include "[e]xtended parenting time." R.C. 3119.23(D). In this case, *by agreement of the parties*, Brian was granted a downward deviation of 38% in the divorce decree filed on May 10, 2010. This was due to the fact that the couple's son lives with Brian half of the time. In support of this downward deviation, in the divorce decree, the parties referenced an exhibit attached to the decree entitled, "Child Support Deviation Findings of Fact and Conclusions of Law." Item four of this document sets forth the reason for the deviation in this case as "extended parenting time." Thus, contrary to Robin's argument, the parties entered an agreement with respect to the 38% downward deviation in the amount of child support based on extended parenting time.

12

{¶52} Because the parties in fact agreed to the downward deviation due to extended parenting time and the trial court found there was no evidence presented that the child's parenting time schedule with Brian had changed since the 2010 divorce decree, the trial court did not abuse its discretion in finding that the downward deviation would continue as originally ordered.

{¶53} Regarding Robin's claim to the tax dependency exemption, Robin makes no argument in her brief, and cites neither the record nor any authority in support. Thus, we do not consider this issue, pursuant to App.R. 16(A)(7). *Hammond v. Cleveland*, 8th Dist. Cuyahoga No. 97174, 2012-Ohio-494, ¶24. In any event, the trial court found no evidence was presented to the magistrates regarding the allocation of the tax exemption. Thus, the trial court did not abuse its discretion in overruling Robin's objection to the magistrates' decision regarding the tax exemption.

{¶54} Robin's fifth assignment of error is overruled.

{¶55} For her sixth assignment of error, Robin alleges:

{¶56} "The trial court erred and/or abused its discretion in various evidentiary issues, to the prejudice of [Robin]."

{¶57} We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Golding*, 11th Dist. Lake No. 2008-L-049, 2009-Ohio-1437, ¶21; *Dzina v. Dzina*, 8th Dist. Cuyahoga No. 90936, etc., 2009-Ohio-136, ¶54.

{¶58} First, Robin argues that the magistrates improperly excluded certain records from Lincoln Electric in evidence, which she had received prior to the November 2009 in-court settlement and the May 10, 2010 divorce decree. Robin argued the documents would show Brian was aware of his retirement benefits prior to the divorce,

13

but she did not explain how these documents would support her argument. The magistrates concluded the documents at issue were not relevant to the issues before them. The magistrates found these documents could not be used to show Brian's knowledge of his benefits prior to the divorce decree because there were no records in evidence to which the proffered documents could be compared to show Brian's prior knowledge. The trial court found the proffered documents were immaterial based on the transcript of the original proceeding.

{¶59} Second, Robin argues the trial court abused its discretion regarding certain e-mails between the parties concerning the exercise of stock options because Brian's counsel failed to offer them in evidence despite his agreement to do so. Robin does not explain how opposing counsel's inaction could equate to an abuse of discretion by the trial court. Nor does she explain how her own failure to offer these exhibits in evidence, which were in her possession, could evidence an abuse of discretion by the trial court. In any event, Robin does not explain why these documents were material or how their absence prejudiced her. Moreover, the court found the e-mails were irrelevant because they did not address any disputed issues.

{¶60} Third, Robin challenges the magistrates' decision not to admit certain other documents, which Robin had requested from Brian in discovery, but which he never produced. However, Robin's attorney did not file a motion to compel discovery pursuant to Civ.R. 37. For this reason, the magistrates refused to allow the documents into evidence. "The party seeking discovery must take 'affirmative action' by filing a motion to compel discovery. Staff Notes to Civ.R. 37." *Kurtz Bros. v. Ace Demo, Inc.*,

14

11th Dist. Portage No. 2014-P-0027, 2014-Ohio-5184, ¶60. Thus, Robin failed to properly raise this issue by filing a motion to compel.

**{¶61}** In light of the forgoing analysis, we hold the trial court did not abuse its discretion in adopting the magistrates' decision regarding these evidentiary rulings.

**{¶62}** Robin's sixth assignment of error is overruled.

**{¶63}** For Robin's seventh and final assignment of error, she contends:

**{¶64}** "The trial court's decision is against the manifest weight of the evidence."

**{¶65}** Robin argues that the errors and abuses of discretion recounted in her first six assigned errors render the trial court's judgment against the manifest weight of the evidence.

**{¶66}** In *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, the Supreme Court of Ohio held: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Id.* at syllabus. An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). In determining whether the trial court's judgment is against the manifest weight of the evidence in civil cases, a court of appeals must be guided by a presumption that the findings of the trier-of-fact were correct. *Id.*

**{¶67}** Applying this highly-deferential standard, we cannot find the trial court's judgment is against the manifest weight of the evidence. We agree with the trial court's finding that Robin's manifest-weight objections were broad and ambiguous and failed to

15

provide any specific ground in support. Further, the magistrates painstakingly reviewed the complex legal and financial issues involved, and the trial court gave a thorough review to the parties' objections to the magistrates' decision.

{¶68} Robin's seventh assignment of error is overruled.

{¶69} For the reasons stated in this opinion, the assignments of error and cross-assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

––––––––––––––––––––––––

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

{¶70} I concur with the majority's well-reasoned disposition of Robin's assignments of error. However, finding merit in Brian's assignments of error, I would reverse and remand on those.

{¶71} By his first assignment of error, Brian objects to the trial court's failure to order the Lake County CSEA to credit him specifically with the money he paid to his bankruptcy trustee for support purposes. The majority notes the magistrates recognized the parties stipulated to this, and ordered the CSEA to adjust its records, and that in adopting the magistrates' decision, the trial court adopted this finding as well,

16

and ordered the CSEA to adjust its account, and submit the account to the parties' counsel. However, it is impossible to tell from the record before us whether this has occurred. I would remand, with instructions that the trial court specifically order the CSEA to adjust its account, and verify that the adjustment has been made.

{¶72} By his second assignment of error, Brian contends the trial court improperly included the exercise of certain stock options in his gross income for support purposes, since they were "nonrecurring income." The majority notes Brian exercised these options in more than three years, and concludes this removed the options from the definition of nonrecurring income under R.C. 3119.01(C)(8). However, nothing in the record contradicts Brian's testimony that Robin received the monies from her half of the 2011 options he exercised on her behalf. She should not receive a windfall from double counting. I would remand for the trial court to determine the value of any stock options exercised by Brian on Robin's behalf, and adjust the parties' incomes accordingly.

{¶73} I respectfully concur in part and dissent in part.

17