[Cite as *Phillips v. Wilkinson*, 2017-Ohio-8505.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT


| | | |
|---|---|---|
| Keith Phillips, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-231 |
| v. | : | (C.P.C. No. 16CV-2453) |
| William C. Wilkinson, Esq. et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |


D E C I S I O N

Rendered on November 9, 2017


**On brief:** *Ford, Gold, Kovoor & Simon, Ltd.*, and *Sarah Thomas Kovoor*, for appellant.

**On brief:** *Taft Stettinius & Hollister LLP*, *Janica Pierce Tucker*, and *Andrew J. Art*, for appellees. **Argued:** *Carolyn A. Davis.*


APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiff-appellant, Keith Phillips, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, William C. Wilkinson, Esq. and Estate of William C. Wilkinson.[1] For the reasons that follow, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In 2012, appellant was an inmate in the custody and control of the Ohio Department of Rehabilitation and Corrections ("DRC") at the Marion Correction Institution ("MCI"). On June 29, 2012, appellant was in the MCI outdoor area when he

---

[1] For purposes of this decision, the Estate of William C. Wilkinson will be referred to as "appellee" and William C. Wilkinson, Esq., will be referred to as "Wilkinson."

was struck in the face by a softball that had been hit over the fence by a contestant in a home run hitting contest. Appellant sustained a serious injury to his right eye and, as a result, permanently lost most of his vision in that eye.

{¶ 3} Appellant, by and through attorney Percy Squire, brought a civil action against DRC in Court of Claims of Ohio alleging negligence. The issues of liability and damages were bifurcated for trial. Squire continued to represent appellant through the liability trial. Following a trial to the Court of Claims on the issue of liability, the Court of Claims found in favor of appellant on his negligence claim.

{¶ 4} At the damages trial, Wilkinson represented appellant. The Court of Claims awarded damages of $200,000 to compensate appellant for pain and suffering, loss of vision in his right eye, and his increased risk of total blindness due to appellant's loss of vision in one eye. The Court of Claims did not award any damages to appellant for loss of future earning capacity and future medical expenses.

{¶ 5} Appellant appealed to this court from the decision of the Court of Claims arguing that the Court of Claims erred when it failed to award damages to appellant for loss of future earning capacity and future medical expenses. In *Phillips v. Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-965, 2013-Ohio-5699, this court affirmed the judgment of the Court of Claims. In holding that the Court of Claims did not err in denying recovery of damages for loss of future earning capacity, this court stated: "Although appellant's alleged damages for loss of earning capacity was premised on his inability to obtain employment in the tool and dye industry due to his injury, appellant failed to call a vocational expert to establish his future employability or vocational aptitude to work in this field. Appellant also failed to present any evidence of his pre-injury wage." *Id.* at ¶ 14.

{¶ 6} On February 22, 2014, shortly after this court issued its decision in *Phillips*, Wilkinson passed away. On February 23, 2015, appellant filed a malpractice action against appellee. Appellant dismissed that case by filing a notice of voluntary dismissal, but he refiled the malpractice action on March 10, 2016. The material allegations of the complaint are as follows:

> 7. At trial, Attorney Wilkinson failed to introduce evidence from a vocational expert to establish my future employability,

> failed to present evidence of my pre-injury wage, failed to present evidence of my ability to obtain employment in the tool and die industry following release and evidence of future medical expenses.
>
> 8. By reason of Defendant's actions, I was deprived of over $850,000 in monetary damages.

(Compl. at 2.)

{¶ 7} On March 7, 2017, the trial court granted appellee's motion for summary judgment for the stated reason that appellant failed to identify a legal expert witness who would give testimony on his behalf, as required by the local rules of court, and because Ohio law required appellant to present the testimony of an expert witness to create a disputed issue of fact as to the elements of his claim for legal malpractice. Specifically, the trial court concluded that "[a]bsent expert testimony there is no basis to find that Wilkinson did not meet the standard of care." (Mar. 7, 2017 Decision at 6.)

{¶ 8} Appellant appealed to this court from the trial court's decision.

## II. ASSIGNMENT OF ERROR

{¶ 9} Appellant assigns the following as trial court error:

> The trial Court erred in granting Appellee's motion for summary judgment on grounds that Mr. Phillips failed to adduce expert testimony to establish legal malpractice.

## III. STANDARD OF REVIEW

{¶ 10} Appellate review of summary judgment is de novo. *Gabriel v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 14AP-870, 2015-Ohio-2661, ¶ 12, citing *Byrd v. Arbors E. Subacute & Rehab. Ctr.*, 10th Dist. No. 14AP-232, 2014-Ohio-3935, ¶ 5. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." *Gabriel* at ¶ 12, citing *Byrd* at ¶ 5, citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992). "We must affirm the trial court's judgment if any of the grounds raised by the movant in the trial court are found to support it, even if the trial court failed to consider those grounds." *Gabriel* at ¶ 12, citing *Helfrich v. Allstate Ins. Co.*, 10th Dist. No. 12AP-559, 2013-Ohio-4335, ¶ 7, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 11} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Byrd* at ¶ 6, citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 12} " '[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' " *Byrd* at ¶ 7, quoting *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. *Byrd* at ¶ 7, citing *Dresher* at 293.

## IV. LEGAL ANALYSIS

{¶ 13} In appellant's sole assignment of error, he argues that the trial court erred when it granted summary judgment in favor of appellee due to appellant's failure to produce expert testimony in support of his legal malpractice claim. We disagree.

{¶ 14} " 'To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss.' " *Goldberg v. Mittman*, 10th Dist. No. 07AP-304, 2007-Ohio-6599, ¶ 10, quoting *Polivka v. Cox*, 10th Dist. No. 01AP-1023, 2002-Ohio-2420, ¶ 21, quoting *Vahila v. Hall*, 77 Ohio St.3d 421 (1997), syllabus. " 'The duty of an attorney to his client is to "* * * exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, and to be ordinarily and reasonably diligent, careful, and prudent in

discharging the duties he has assumed." ' " *Yates v. Brown*, 185 Ohio App.3d 742, 2010-Ohio-35, ¶ 17 (9th Dist.), quoting *Palmer v. Westmeyer*, 48 Ohio App.3d 296, 298 (6th Dist.1988), quoting 67 Ohio Jurisprudence 3d, Malpractice, Section 9, at 16 (1986).

{¶ 15} In *Goldberg*, the plaintiff brought a legal malpractice action against her former bankruptcy counsel.  *Id.* at ¶ 1-4.  Plaintiff alleged that counsel committed legal malpractice by failing to attach, as exhibits to plaintiff's response to the trustee's motion for summary judgment, certain evidentiary materials demonstrating the existence of "disputed facts."  *Id.* at ¶ 3.  In affirming the trial court's grant of summary judgment for plaintiff, this court set out the relevant law regarding the client's burden of production in a legal malpractice action as follows:

> In *McInnis v. Hyatt Legal Clinics* (1984), 10 Ohio St.3d 112, 10 OBR 437, 461 N.E.2d 1295, the Supreme Court of Ohio held that, in a legal malpractice case, expert testimony is generally required in order to prove breach of the duty that the attorney owed to the plaintiff, unless the claimed breach of professional duty is "well within the common understanding of * * * laymen * * *."  *Id.* at 113; see, also, *Whiteside v. Conroy*, 2005 Ohio 5098, ¶50.  "Expert testimony is required so that the trier of fact does not have to speculate on the standard of care, particularly in a complex case involving * * * [matters] which are normally not within the realm of understanding of the layman." *Northwestern Life Ins. Co. v. Rogers* (1989), 61 Ohio App.3d 506, 512, 573 N.E.2d 159. This "standard of care" has been described as that which "a reasonable attorney, similarly situated, would have * * * [done] under the circumstances." *Brunstetter v. Keating*, 2003-Ohio-3270, ¶18.

*Id.* at ¶ 11.

{¶ 16} "Summary judgment in favor of the attorney is appropriate when a plaintiff fails to supply expert testimony on alleged negligence that is 'neither within the ordinary knowledge of the layman nor so clear as to constitute negligence as a matter of law.' " *Brunstetter v. Keating*, 11th Dist. No. 2002-T-0057, 2003-Ohio-3270, ¶ 16, quoting *Bloom v. Dieckmann*, 11 Ohio App.3d 202, 203 (1st Dist.1983).  "In all but a few cases, expert testimony is required to support allegations of legal malpractice."  *Passerell v. Cordell*, 11th Dist. No. 2014-A-0050, 2015-Ohio-1767, ¶ 27, quoting *Brunstetter* at ¶ 16; *Hinton v. Masek*, 11th Dist. No. 2013-T-0110, 2014-Ohio-2890, ¶ 15.  In *Goldberg*, this

court identified several examples of cases where expert testimony is required in order for the plaintiff to demonstrate an attorney's breach of duty: failing to include certain claims in a complaint; advising a client to voluntarily dismiss a bankruptcy action; advising a client regarding proceedings in the Ohio Liquor Control Commission; advising a client whether to appeal the denial of certain workers' compensation claims and failing to obtain a particular disability award; defending clients in mortgage foreclosure proceedings; representing the accused in a trial on charges of aggravated arson; and negotiating a plea agreement in a prosecution for gross sexual imposition. (Internal citations omitted.) *Id.* at ¶ 13.

{¶ 17} Ohio courts have also held that, in certain circumstances, the claimed breach of professional duty may be within the common understanding of laymen and that the testimony of a legal expert may not be required to establish an attorney's breach of duty. *See, e.g., DePugh v. Sladoje*, 111 Ohio App.3d 675, 681-82 (2d Dist.1996) (expert testimony may not be necessary to support a legal malpractice claim where the attorney fails to file a viable claim before the statute of limitations expires); *Dimacchia v. Burke*, 904 F.2d 36 (6th Cir.1990), citing *McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112, 113 (1984) ("The failure to abide by a client's specific instructions may be sufficient to establish a breach of a professional duty without expert testimony."). *But see Compston v. Holzapfel*, 12th Dist. No. CA90-08-079 (July 15, 1991) (expert testimony was required to establish that an attorney's failure to file certain documents and do other acts in a domestic relations case, despite his client having asked him to do so, was a departure from the standard of care).

{¶ 18} In this case, appellant argues that it is within the common understanding of laymen that Wilkinson breached a duty owed to appellant by failing to produce expert testimony of a vocational expert to support an award of damages to appellant for future loss of earning capacity in the tool and die industry. We disagree.

{¶ 19} In *Northwestern Life Ins. Co. v. Rogers*, 61 Ohio App.3d 506 (10th Dist.1989), the clients maintained that their counsel committed malpractice by failing to disclose a conflict of interest cognizable under the Code of Professional Responsibility then applicable to attorneys. This court held that because there could be instances where noncompliance with the Code of Professional Responsibility would not constitute

malpractice, the plaintiffs were required to present expert testimony as to the details of the breach of the code and how such a breach constituted malpractice. *Id.* at 512. We held that the case was not one in which the breach of duty was "so patently obvious as to negate" the requirement for expert testimony. *Id.*

{¶ 20} Similarly, in *Goldberg*, this court, citing *Northwestern Life Ins.*, determined that "the task that appellee complains appellant failed to do – attach evidence to a memorandum opposing a motion for summary judgment – may or may not be a departure from the standard of care in an adversary proceeding in bankruptcy court, given the particular circumstances of appellee's case." *Goldberg* at ¶ 15. Accordingly, this court found that expert testimony would normally be required to establish the critical elements of breach and duty.[2]

{¶ 21} In our opinion, the rule of law adopted by this court in *Goldberg* and *Northwestern Life* compels us to affirm the trial court judgment in this case. The task appellant claims Wilkinson failed to do in this case—call a vocational expert to give testimony at his damages trial to support his claim of future loss of earning capacity in the tool and die industry—may or may not be a departure from the standard of care depending on the particular circumstances of appellant's case against DRC.[3] Here, appellant did not submit his own affidavit in opposition to appellee's motion for summary judgment. And, as noted above, Wilkinson passed away prior to the commencement of appellant's malpractice action. Consequently, there is no evidence in the record to show what efforts, if any, Wilkinson made to secure the testimony of a vocational expert regarding appellant's future employability in the tool and die industry. On this record, it is just as reasonable to infer from the fact that a vocational expert did not testify in the Court of Claims, that Wilkinson made a diligent effort to obtain such testimony but was unable to find a vocational expert who would provide testimony favorable to appellant. Thus, under the rule of law announced in *Northwestern Life* and *Goldberg*, it was

---

[2] This court affirmed the judgment of the trial court in plaintiff's favor even though she did not produce expert testimony because the attorney's failure to respond to requests for admissions in the bankruptcy case admitted facts demonstrating that plaintiff's defense was at least "colorable." *Goldberg* at ¶ 24.

[3] In criminal cases, the decision whether or not to call a particular witness, including an expert witness, is generally considered a trial tactic which will not sustain a claim of ineffective assistance of counsel. *State v. Jordan*, 7th Dist. No. 06 HA 586, 2007-Ohio-3333, ¶ 61, citing *State v. Payton*, 124 Ohio App.3d 552, 558 (12th Dist.1997).

necessary for appellant to produce the testimony of a legal expert to establish that the standard of care in the legal community required Wilkinson to present the testimony of a vocational expert to support his damages claim against DRC.  Without expert testimony establishing the standard of care in the legal community, a trier of fact deliberating on appellant's legal malpractice claim would be required to speculate whether a competent attorney, similarly situated, would have presented the testimony of a vocational expert in the Court of Claims.  Under the particular facts of this case, appellant's failure to provide expert testimony was fatal to his legal malpractice claim, and summary judgment for appellee was appropriate.  *Passerell*; *Northwestern Life*; *Goldberg*.

{¶ 22} Appellant argues, however, that based on our decision in *Phillips*, it is patently obvious that Wilkinson deviated from the standard of care by failing to present the testimony of a vocational expert in the Court of Claims.  We disagree.

{¶ 23} In ruling on appellant's assignment of error alleging that the Court of Claims erred by failing to award damages for future loss of earning capacity, this court in *Phillips* made the following observations:

> The trial court expressly addressed the evidence appellant presented to prove loss of earning capacity damages.  The trial court noted the absence of evidence to prove key elements of a loss of earning capacity damage claim.  Although appellant's alleged damages for loss of earning capacity was premised on his inability to obtain employment in the tool and dye industry due to his injury, appellant failed to call a vocational expert to establish his future employability or vocational aptitude to work in this field.  Appellant also failed to present any evidence of his pre-injury wage.  The trial court found that appellant did not prove a loss of earning capacity because he did not prove that he was likely to obtain employment in the tool and dye industry upon his release from prison and because there was no evidence of appellant's pre-injury wage.  In essence, the trial court found that appellant failed to prove that his injury impacted his capacity to work in the tool and dye industry because he failed to prove that he had the capacity to work in that industry in the future.

*Id.* at ¶ 14.

{¶ 24} Appellant insists this court's statements that "appellant failed to call a vocational expert to establish his future employability or vocational aptitude to work in

this field" and "failed to present any evidence of his pre-injury wage" amounts to a pronouncement by this court that the standard of care in the legal community required Wilkinson to present the testimony of a vocational expert at his damages trial in the Court of Claims. *Id.* This is not the case.

{¶ 25} As noted above, there is no evidence in the record regarding the efforts, if any, Wilkinson made to secure the testimony of a vocational expert in the Court of Claims case. Moreover, while it is reasonable to conclude from our decision in *Phillips* that the absence of a favorable opinion from a vocational expert supported the Court of Claims' decision to award no damages to appellant for loss of future earning capacity, it is not reasonable to interpret this court's pronouncement in *Phillips* as criticism of Wilkinson's performance. In the *Phillips* decision, we noted other "facts" developed in the Court of Claims strongly suggest that under the circumstances of appellant's case against DRC, a vocational evaluation would not have proved useful to appellant. *Id.* at ¶ 15. In rejecting appellant's contention that the Court of Claims erred when it failed to award damages for future loss of earning capacity, this court made the following observations about the evidence presented in the Court of Claims:

> Appellant challenges the trial court's determination by pointing to appellant's testimony that he had worked intermediately in the tool and dye industry prior to his incarceration and that he had intended to seek work in that industry after his release from prison in 2017. However, this evidence must be examined in light of other facts that support the trial court's conclusion that appellant lacked the capacity to work in the tool and dye industry regardless of his eye injury.
>
> Appellee emphasizes that appellant will be 52 years old when he is released from prison in 2017 following the completion of his eight-year prison sentence. Appellant had a significant criminal record, including convictions for driving under the influence, robbery, domestic violation, escape, felonious assault, weapon under disability, and firearm specification. Appellant had a history of chemical dependency for alcohol and marijuana. Appellant did not graduate from high school and has not worked at all since 2004. His pre-2004 work history reflected employment mostly through temporary agencies and he had been fired from three or four prior jobs. Significantly, appellant also had a disabling cardiac condition

for which he was receiving social security disability benefits prior to his incarceration. Based upon these facts, the trial court's determination that appellant failed to prove future damages for loss of earning capacity is not against the manifest weight of the evidence.

*Id.* at ¶ 15-16.

{¶ 26} Given appellant's vocational impediments, as documented by this court in *Phillips*, it is certainly possible that the absence of testimony from a vocational expert regarding appellant's future employability in the tool and die industry was not the result of a breach of the standard of care by Wilkinson. On the record in this case, and in light of the "facts" developed by this court in *Phillips*, it is just as likely that Wilkinson complied with the standard of care in the legal community by electing not to call a vocational expert at appellant's damages trial. Because the failure to call a vocational expert to testify at appellant's damages trial in the Court of Claims may or may not have been a breach of the applicable standard of care in the legal community, the rule of law adopted by this court in *Northwestern Life* and *Goldberg* required appellant to present the testimony of a legal expert to establish the applicable standard of care under the particular circumstances of appellant's claim against DRC. Without expert testimony establishing the standard of care in the legal community, a trier of fact deliberating on appellant's legal malpractice claim would be required to speculate whether a competent attorney, similarly situated, would have presented the testimony of a vocational expert in the Court of Claims. In our view, appellant's claim of attorney malpractice in this case is not one in which the breach of duty was "so patently obvious as to negate" the requirement for expert testimony. *Northwestern Life* at 512; *Goldberg* at ¶ 14. Nothing in our decision in *Phillips* causes us to question that conclusion.

{¶ 27} We note that the only evidence produced by appellant in opposition to appellee's motion for summary judgment is the affidavit of Percy Squire, appellant's original trial counsel in the Court of Claims case. The record reveals that Squire was suspended from the practice of law shorty after the liability trial and that decedent, Wilkinson, succeeded him as appellant's trial counsel for the damages portion of the case. In his affidavit, Squire does not offer an opinion as to the applicable standard of care in the legal community. Rather, Squire avers as follows:

1.  [Appellant] is the nephew of Arlette T. Gatewood.

2. Arlette T. Gatewood, as the material at Exhibit 1 establishes, was a very prominent labor leader in the Youngstown, Ohio area.

3. In preparation for the damages trial for [appellant], I interviewed Mr. Gatewood as a potential witness.

4. Mr. Gatewood informed me that based upon his years of experience in the organized labor arena in Mahoning County, Ohio, he was positive he could locate employment for [appellant].

5. Mr. Gatewood was prepared to introduce [appellant] to prospective employers.  Aside from Mr. Gatewood, [appellant] has other relatives heavily involved in the organized labor movement.[4]

(Mar. 3, 2017 Memo. in Opp., Ex. B.)

{¶ 28} Appellee first contends that Squire's affidavit contains inadmissible hearsay statements which could not be considered by the trial court in ruling on appellee's motion for summary judgment.  We agree.

{¶ 29} "When ruling upon a motion for summary judgment, a trial court only considers admissible evidence."  *Guernsey Bank v. Milano Sports Ents.*, 177 Ohio App.3d 314, 2008-Ohio-2420, ¶ 59 (10th Dist.), citing *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 631 (1992), fn. 4.  Squire's averments regarding the unsworn, out-of-court statements made by Gatewood are inadmissible hearsay for which no exception applies.  Thus, Gatewood's statements about appellant's post-incarceration employability could not be considered as evidence in opposition to appellee's motion for summary judgment.  *Guernsey Bank*; *Tokles & Son, Inc.*

{¶ 30} Moreover, the trial court also determined that, even if the hearsay statements from Gatewood were admissible in evidence, Squire's affidavit failed to allege facts which would support a reasonable inference that but for the eye injury, appellant retained the capacity to work in the tool and die industry.  The trial court further concluded that Squire's affidavit did not have the effect of rendering the claimed breach of

---

[4] Exhibit 1 is a tribute to the late Arlette T. Gatewood authored by the Youngstown Warren Black Caucus.

duty by Wilkinson—failing to call a vocational expert to support an award of damages in the Court of Claims for loss of future earning capacity in the tool and die industry—so obvious that it was within the ordinary knowledge and experience of laymen. We agree with the trial court.

{¶ 31} The rule prohibiting the stacking of one inference on another generally prohibits drawing one inference solely and entirely from another inference, where that inference is unsupported by any additional facts or inferences drawn from other fact. *Cole v. Contract Framing, Inc.*, 162 Ohio App.3d 612, 2005-Ohio-4244, ¶ 23 (10th Dist.), citing *Donaldson v. N. Trading Co.*, 82 Ohio App.3d 476, 481 (10th Dist.1992). Here, Gatewood's opinion, as a labor leader in Youngstown, Ohio, that "he was positive he could locate employment for [appellant]" does not permit an inference that but for his eye injury, appellant retained the capacity to work in the tool and die industry and that, more likely than not, appellant would have obtained such employment following his release from prison. (Squire Aff. at ¶ 4.) Gatewood's hearsay statements do not even mention appellant's eye injury. At best, Gatewood's testimony permits an inference that he could have found some employment for appellant following his release from prison.

{¶ 32} Thus, even if the hearsay statements in Squire's affidavit were considered, the statements do not alter the fact that the task appellant claims Wilkinson failed to do— call a vocational expert in the Court of Claims to support appellant's claim of future loss of earning capacity in the tool and die industry—may or may not be a departure from the standard of care depending on the particular circumstances of appellant's case against DRC. Because the claimed breach of professional duty in this case was not so obvious that it was within the ordinary knowledge and experience of laymen, Ohio law required appellant to produce expert legal testimony to establish the standard of care in the legal community. *Passerell*; *Northwestern Life*; *Goldberg.* Under the particular circumstances of this case, appellant's failure to produce such testimony in response to appellee's motion for summary judgment was fatal to appellant's legal malpractice claim, and summary judgment for appellee was appropriate. *Passerell*; *Northwestern Life*; *Goldberg.*

{¶ 33} Though his assignment of error is broadly framed, appellant does not argue that the trial court erred by granting summary judgment with respect to appellant's theory that Wilkinson committed legal malpractice by failing to provide evidentiary support in

the Court of Claims for an award of future medical expenses. Appellant's brief in this court focuses exclusively on the alleged failure to call a vocational expert. App.R. 16(A)(7) requires that an appellant include in his brief an "argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Because appellant made no argument regarding this theory of liability, appellant waived the argument for purposes of appeal. *See, e.g.*, *Mullins v. Grosz*, 10th Dist. No. 10AP-23, 2010-Ohio-3844, ¶ 37, fn. 1 ("Because appellant has not asserted any argument regarding his common-law negligence claims, he has waived any argument related thereto pursuant to App.R. 16(A)(7)."); *Jackson v. Jackson*, 11th Dist. No. 2013-L-035, 2015-Ohio-3825 (issue concerning tax dependency exemption was waived for purposes of appeal because wife made no argument in the brief and cited neither the record nor any authority in support); *State v. Wickwire*, 9th Dist. No. 27675, 2016-Ohio-5217 (where appellant made no specific argument as to why his conviction was against the manifest weight of the evidence, and under App.R. 16(A)(7), the court would not create one for him).

{¶ 34} For the foregoing reasons, appellant's sole assignment of error is overruled.

## V. CONCLUSION

{¶ 35} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J., and LUPER SCHUSTER, J., concur.

_____