[Cite as *Piterangelo v. Hudson*, 2023-Ohio-820.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JAMES E. PIETRANGELO, II,  :

    Plaintiff-Appellant,  :

                       No. 111805

    v.  :

CORRINNE HUDSON,  :

    Defendant-Appellee.  :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 16, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-884279

---

### *Appearances:*

James E. Pietrangelo, II, *pro se*, and The Henry Law Firm
and Eric W. Henry, *for appellant*.

Collins, Roche, Utley & Garner, LLC, Beverly A. Adams,
and Kurt D. Anderson, *for appellee*.

MARY J. BOYLE, J.:

{¶ 1} This appeal involves a motor vehicle accident with plaintiff-appellant,

James E. Pietrangelo, II ("Pietrangelo"), pro se, and defendant-appellee, Corrinne

Hudson ("Hudson"). Pietrangelo brought a pro se negligence action against Hudson

alleging that she caused injury to his head, neck, and back.[1] After a long procedural history, the matter proceeded to trial, where the court granted Hudson's motion for directed verdict. Pietrangelo appeals the trial court's directed verdict in favor of Hudson and the denial of his motion for summary judgment. For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 2} In August 2015, Hudson rear-ended Pietrangelo. Hudson conceded her negligence in causing the accident. The dispute is the nature and proximate cause of Pietrangelo's alleged injuries. In his complaint, Pietrangelo alleged that as a result of the accident, he "suffered injury, shock, pain, and suffering" to his back and that he has continued to experience "significant and debilitating pain" from the injury. (Complaint, Aug. 9, 2017.) He further alleged permanent injuries from the incident and requested compensatory damages for his past, present, and future damages.

{¶ 3} On January 18, 2018, the trial court issued a case management conference order setting the discovery deadline for April 20, 2018, in accordance with Loc.R. 21.1 of the Court of Common Pleas of Cuyahoga County, General Division. It also set the deadline for Pietrangelo's expert report on April 20, 2018, and Hudson's expert report on June 4, 2018.

---

[1] Pietrangelo was an attorney licensed to practice law in Ohio at the time of the accident.

{¶ 4} Pietrangelo contested Hudson's investigation into his injuries. He acknowledged prior head, neck, and back injuries, but he refused to disclose his prior medical history, claiming HIPAA privilege. Hudson sought to compel production of Pietrangelo's prior medical records in May 2018. The trial court ordered that Pietrangelo sign the standard medical authorizations by June 22, 2018, otherwise it would dismiss the case. Pietrangelo appealed from this order to our court in *Pietrangelo v. Hudson*, 2019-Ohio-1988, 136 N.E.3d 867 (8th Dist.).

{¶ 5} On appeal, we affirmed the trial court's order, finding that Pietrangelo merely refused to sign the authorizations rather than seeking a protection order or requesting an in camera inspection of any documents. *Id.* at ¶ 23. Pietrangelo appealed the decision to the Ohio Supreme Court and the U.S. Supreme Court, both of which declined jurisdiction. *See Pietrangelo v. Hudson*, 158 Ohio St.3d 1422, 2020-Ohio-647, 140 N.E.3d 753; *Pietrangelo v. Hudson*, ____U.S.____, 141 S.Ct. 254, 208 L.Ed.2d 27 (Oct. 5, 2020).

{¶ 6} On remand, Pietrangelo filed a motion for protective order and in camera review and a motion for reconsideration of prior order and consideration of medical authorizations at issue. The trial court granted these motions in part and denied them in part. The court ordered the modification of the five medical authorizations Hudson submitted and ordered Pietrangelo to complete the authorizations within seven days after they were received. The court further ordered that

5. By permitting discovery of such records the court is not ruling on their admissibility at trial. Following production, [Pietrangelo] may file a motion in limine seeking to have certain records or information excluded or redacted at trial. Any such motion shall sufficiently identify the record or information sought to be protected, and the record itself shall be submitted for in camera review.

* * *

The court finds that the authorizations were sufficiently identified for [Pietrangelo's] compliance and that neither the authorizations nor this court's order violated HIPAA, as HIPAA expressly allows production of records by court order.

Finally, [Pietrangelo] did not and still has not submitted records for review nor supplied any affidavit or other evidence establishing the substance and nature of the information he claims to be irrelevant and privileged, and thus, this court has neither any duty nor any ability to craft a protective order.

[Pietrangelo] shall sign and deliver the authorizations as ordered above, within 10 days of the date of this order, or the case will be dismissed with prejudice at [Pietrangelo's] costs.

(Judgment Entry, Mar. 11, 2021.)

{¶ 7} Pietrangelo filed a second appeal contesting this order in *Pietrangelo v. Hudson*, 8th Dist. Cuyahoga No. 110365. Hudson withdrew her demand for the HIPAA authorizations, and subsequently, we granted Hudson's motion to dismiss the appeal as moot. Pietrangelo sought reconsideration and en banc review, which we denied.

{¶ 8} While this appeal was pending, Pietrangelo filed a motion for summary judgment in April 2021, as to the nature of his injuries and proximate cause, "leaving only the amount of damages to be determined by a jury." In support of his motion, Pietrangelo submitted his own affidavit alleging his injuries and

symptoms, including immediate excruciating pain in his low back that was caused by the impact. He averred that none of his medical providers were able to successfully treat or heal those injuries, the medication had no effect on his pain, and the pain had profound effect on his sleep and caused depression.

{¶ 9} Hudson opposed Pietrangelo's motion, arguing that Pietrangelo's refusal to produce prior medical records and his acknowledgment of prior head, neck, and back injuries created questions of fact as to proximate cause. Hudson also argued that Pietrangelo's claims of depression and pain required expert testimony as to proximate cause, and his affidavit, which was his sole evidence, relied on his personal credibility, which is a question of fact for a jury to decide. The trial court denied Pietrangelo's motion for summary judgment, and the matter proceeded to a jury trial in July 2022.

{¶ 10} Prior to trial, in June 2022, Hudson filed five separate motions in limine seeking to preclude certain evidence. The trial court ruled on these motions on the day of trial. In the first motion, Hudson sought to preclude Pietrangelo's brother, Dr. Lee A. Pietrangelo, M.D., as a witness because Pietrangelo never disclosed his brother as a witness during discovery. The trial court granted the motion, stating that Dr. Lee Pietrangelo is not authorized to be called as a witness because of Pietrangelo's failure to comply with the Ohio Rules of Civil Procedure and the court's local rules.

{¶ 11} In the second motion, Hudson sought to preclude Pietrangelo or his witnesses from introducing into evidence any testimony, records, or statements

concerning insurance available to Pietrangelo because it is irrelevant to the proximate causation issue. In the third motion, Hudson sought to preclude Pietrangelo from presenting any evidence regarding lost time, wages, or income as a result of the accident because he stated in his answers to interrogatories that he is not seeking compensation for lost time, wages, or income and he did not provide any verification of any lost time, wages, or income. In the fourth motion, Hudson sought to preclude evidence of any medical bill for which a corresponding medical record was not produced and any medical record or bill not produced in discovery. The trial court granted these three motions.

{¶ 12} In the fifth motion, Hudson sought to preclude the amounts accepted as full payment by Pietrangelo's medical providers for medical bills. The trial court granted this motion in part, noting that the case will be submitted to the jury based on original amounts billed. If the jury verdict is favorable to Pietrangelo, the court ordered that additional questions will be presented as to whether the medical bills should be reduced to the amount accepted in the insurance payments.

{¶ 13} At trial, Pietrangelo advised in his opening statement that (1) his witnesses would be himself and Hudson; (2) he "will testify that from the moment of impact until this day, this very day and continuing, I have been in continuous pain at a level of 1 to 2. * * * [E]very second of every minute, of every hour of every day, of every month, of every year for the last seven years you'll hear me testify to that that I have been in continuous pain. It feels like there's something, like a fork is stuck in my spine. * * * The pain and injury has never subsided for one second"; (3)

for two and a half months, the pain in his lower back was so bad that he could not could barely walk and was bedridden for most of that two and a half months; (4) the spinal injury dramatically impaired his life and the worst part about his life now is that he can no longer get a good night's sleep; (5) he is in a constant mental fog and cannot concentrate; and (6) he has been in a depression because of this spinal injury. (July 18, 2022, tr. 99, 104-106, 109.)

{¶ 14} Following opening statements, Hudson moved for a directed verdict, arguing that both the alleged nature and permanency of Pietrangelo's injuries were not obvious or within the common knowledge of jurors and required expert testimony. In opposition, Pietrangelo argued that in certain instances, expert medical testimony is not necessary and that "the jury can easily see and can understand whiplash and the nature of a continuous back injury therefrom." (July 18, 2022, tr. 118-119.) The court, however, noted that whiplash is a motion of the head and neck and normally causes cervical symptoms, "not the lower back." (July 18, 2022, tr. 125.) Pietrangelo admitted he did not know whether whiplash was "normally in the cervical area." (July 18, 2022, tr. 124.)

{¶ 15} In granting the motion for directed verdict, the court found that Pietrangelo did not present evidence in compliance with the rules in order to present his claims to the jury. The court further noted that Pietrangelo made

the decision to not prepare the case with appropriate experts in discovery in that regard. * * *

So, any consequences are ruled from your decision, not mine. And you've been requested for years, years to do this. And throughout the

course of these proceedings in this case, you have not taken the orders of this Court which are normal orders, and you had gone off the deep end, and then you have filed appeals on matters that are common to the litigation of traffic accident cases.

I don't know why that happened, but we tried to get you to comply with the reasonable orders of the Court and you've always refused to do so. That explanation is within you, not me.

(July 18, 2022, tr. 130.) The trial court then entered judgment for Hudson and dismissed Pietrangelo's claims with prejudice.

{¶ 16} Pietrangelo now appeals, for the third time, raising the following two assignments of error for review:

**Assignment of Error One:** The trial court erred and/or abused its discretion to the prejudice of [Pietrangelo] in denying [Pietrangelo's] motion for summary judgment before trial.

**Assignment of Error Two:** The trial court erred and/or abused its discretion to the prejudice of [Pietrangelo] in granting [Hudson's] motion for directed verdict (including in concluding that [Pietrangelo] injuries as described in his opening statement were abnormal for a rear-end accident and therefore required expert testimony to prove proximate causation) and consequently dismissing [Pietrangelo's] case with prejudice, assessing court costs against [Pietrangelo], and entering judgment in [Hudson's] favor in the case.

## II. Law and Analysis

### A. Summary Judgment

### 1. Standard of Review

{¶ 17} An appellate court reviews the grant or denial of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). In a de novo review, this court affords no deference to the trial court's decision and independently reviews the record to determine whether the denial of summary

judgment is appropriate. *Hollins v. Shaffer*, 182 Ohio App.3d 282, 2009-Ohio-2136, 912 N.E.2d 637, ¶ 12 (8th Dist.).

{¶ 18} Summary judgment is appropriate if (1) no genuine issue of any material fact remains; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Id.*, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 631 N.E.2d 150 (1994).

{¶ 19} The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id.* After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact. *Id.*

### 2. The Trial Court Properly Denied Pietrangelo's Motion for Summary Judgment

{¶ 20} Pietrangelo argues that he was entitled to summary judgment on "everything in his negligence claims against Hudson but the *amount* of damages the

jury was going to award him." (Emphasis sic.) He claims that his evidentiary materials were sufficient by themselves without expert evidence to prove his proximate injuries.

{¶ 21} Under Ohio law, a negligence claim requires proof of "(1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach." *Wallace v. Ohio DOC*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 22, citing *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

{¶ 22} In the instant case, the record reveals that Pietrangelo acknowledged prior neck and back injuries, yet failed to obtain expert testimony as to the proximate cause of his injuries and failed to provide any records for the preexisting injuries. According to the court's case management conference order, Pietrangelo was to complete discovery and submit his expert report by April 20, 2018. Loc.R. 21.1 of the Court of Common Pleas of Cuyahoga County, General Division requires the parties to "submit expert reports in accord with the time schedule established at the Case Management Conference." The rule also provides that "[s]ince Ohio Civil Rule 16 authorizes the Court to require counsel to exchange the reports of medical and expert witnesses expected to be called by each party, each counsel shall exchange with all other counsel written reports of medical * * * expert witnesses expected to testify in advance of the trial." *Id.*

{¶ 23} In March 2021, the court found that the medical authorizations were sufficiently identified for Pietrangelo's compliance and that the authorizations do

not violate HIPAA because HIPAA expressly allows production of records by court order. Pietrangelo, however, still failed to comply with the court's orders and local rules and never submitted an expert report or medical records relating to his preexisting injuries.

{¶ 24} "In order to establish proximate cause, there must be evidence that a direct or proximate causal relationship existed between the accident and the injury or disability complained of." *Jacobs v. Gateway Property Mgt.*, 8th Dist. Cuyahoga No. 84973, 2005-Ohio-1983, ¶ 12, citing *Buckeye Union Ins. Co. v. Vassar*, 1st Dist. Hamilton No. C-800007, 1981 Ohio App. LEXIS 13780 (Feb. 18, 1981). Pietrangelo failed to provide expert testimony and treatment records to clarify the history of the prior injuries. As a result, he did not meet his burden of establishing a direct and proximate causal relationship between the claimed injury and the motor vehicle accident.

{¶ 25} Pietrangelo further failed to meet his burden of establishing proximate cause by not supporting his injuries with expert testimony. In his affidavit attached to his motion for summary judgment, Pietrangelo described his injuries as "soft tissue damage" injury consisting of back strain with instantaneous excruciating pain and significant interference with sleep and daily activities for years, resulting in significant depression. We have noted that while in some instances the causal nexus between an accident and the alleged injury is so clear as to obviate the need for expert testimony in a personal injury claim, "[i]t is when the internal complexities of the body are at issue, that we generally initiate the

metamorphosis in the evidential progression where medical testimony moves from the pale of common knowledge matters and within layman competency where expert testimony is not required, to those areas where such testimony is more appropriate and indeed most necessary for the trier of fact to understand the nature and cause of the injuries alleged." *Wood v. Estate of Batta*, 8th Dist. Cuyahoga No. 90430, 2008-Ohio-1400, ¶ 24, citing *Wright v. Columbus*, 10th Dist. Franklin No. 05AP-432, 2006-Ohio-759. Soft tissue injuries such as neck, back, and shoulders pain, are not so apparent as to be a matter of common knowledge. *Id.* at ¶ 25, citing *Langford v. Dean*, 8th Dist. Cuyahoga No. 74854, 1999 Ohio App. LEXIS 4668 (Sept. 30, 1999). *See also Hodge v. King*, 8th Dist. Cuyahoga No. 72823, 1998 Ohio App. LEXIS 3303 (July 16, 1998); *Davis v. D&T Limousine Serv., Inc.*, 8th Dist. Cuyahoga No. 65683, 1994 Ohio App. LEXIS 2615 (June 16, 1994); *Dolly v. Daugherty*, 8th Dist. Cuyahoga No. 40021, 1979 Ohio App. LEXIS 11205 (Nov. 15, 1979). Thus, expert medical testimony was required to establish proximate cause of Pietrangelo's current injuries.

{¶ 26} Based on the foregoing, we find that the trial court properly denied Pietrangelo's motion for summary judgment because Pietrangelo failed to demonstrate that no genuine issue of material fact exists for trial. Expert medical testimony was required to establish proximate cause of his alleged injuries and Pietrangelo failed to meet his burden by not including expert medical testimony with respect to this issue.

{¶ 27} Accordingly, the first assignment of error is overruled.

### B. Motion for Directed Verdict

### 1. Standard of Review

{¶ 28} Appellate review of the trial court's decision to grant or deny a motion for a directed verdict under Civ.R. 50(A)(4) is a question of law that we review de novo. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 4.

### 2. The Trial Court Properly Granted Hudson's Motion for Directed Verdict

{¶ 29} Civ.R. 50(A)(4) provides that a motion for directed verdict can be granted when, after construing the evidence most strongly in favor of the party against whom the motion is directed, "reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." The "reasonable minds" test mandated by Civ.R. 50(A)(4) requires the court to discern only whether there exists any evidence of substantive probative value that favors the position of the nonmoving party. Civ.R. 50(A)(4); *Ruta v. Breckenridge-Remy Co.*, 69 Ohio St.2d 66, 69, 430 N.E.2d 935 (1982), citing *Hamden Lodge v. Ohio Fuel Gas Co.*, 127 Ohio St. 469, 189 N.E.2d 246 (1934).

{¶ 30} The Ohio Supreme Court has found that when ruling on a motion for directed verdict after an opening statement, trial court may grant the motion "only if the opening statement shows that a party is completely unable to sustain a cause of action should the court take the case away from the jury by directing a verdict." *Parrish v. Jones*, 138 Ohio St.3d 23, 2013-Ohio-5224, 3 N.E.3d 155, ¶ 32. The

*Parrish* Court explained that when it is unclear from the opening statement whether the party against whom the motion is made can proceed with its case, the trial court

> must determine whether that party has otherwise set forth a cause of action or defense. It is at this point that the court may choose to consult the pleadings to determine whether 'all the facts expected to be proved, and those that have been stated, do not constitute a cause of action or a defense,' pursuant to [*Brinkmoeller v. Wilson*, 41 Ohio St.2d 223, 325 N.E.2d 233 (1975)]. In short, the court must give the party against whom the motion is made the benefit of the doubt.

*Id.* at ¶ 33.

{¶ 31} Pietrangelo, relying on *Parrish*, argues that motions for directed verdict made following an opening statement are granted only in rare circumstances. He further argues the court erred by concluding that the injuries he described in his opening statement were abnormal for a rear-end accident, and therefore, required expert testimony to prove proximate causation. Hudson argues that the trial court's directed verdict was proper because Pietrangelo's alleged injuries were not objectively obvious or the cause so apparent as to be a matter of common knowledge.

{¶ 32} A review of Pietrangelo's opening statement reveals that he spoke to the jury about (1) who he would be calling as witnesses, which consisted only of himself and Hudson; (2) the continuous pain he has suffered for the past seven years, including the severe pain he felt for two and a half months; (3) the spinal injury dramatically impairing his life; (4) his constant mental fog; and (5) his depression. (July 18, 2022, tr. 99, 104-106, 109.) Hudson moved for a directed verdict, arguing that Pietrangelo could not prove causation. The trial court then

recessed to research the matter. Upon resuming the next day, the court ultimately concluded that Pietrangelo had not presented evidence in compliance with the rules in order to present his claims to the jury and granted Hudson's motion for directed verdict.

{¶ 33} We note that in personal injury actions, proximate cause is a determinative issue. It is well-established that expert testimony is essential to prove the proximate cause of a personal injury, unless the cause is a matter of common knowledge. *Darnell v. Eastman*, 23 Ohio St.2d 13, 261 N.E.2d 114 (1970), syllabus. In *Darnell*, the Ohio Supreme Court stated:

> Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion. In the absence of such medical opinion, it is error to refuse to withdraw that issue from the consideration of the jury.

*Id*. at syllabus.

{¶ 34} Here, Pietrangelo's alleged injuries were low-back strain, seven years of daily pain, mental fog, and depression. Pietrangelo advised the jury that the pain and injury from the incidence "has never subsided for one second" and he has been in continuous pain for the past seven years. He further advised the jury that his back injury dramatically impaired his life — he can no longer get a good night's sleep; he is in a constant mental fog and cannot concentrate; and he has been depressed. None of these injuries, however, are "so apparent as to be matters of common knowledge."

{¶ 35} As we stated above, "the causal connection between soft tissue injuries incurred in motor vehicle accidents and alleged subsequent physical disability is not so apparent as to be a matter of common knowledge, where the alleged injuries involved strains to the neck and back area." *Wood*, 8th Dist. Cuyahoga No. 90430, 2008-ohio-1400 at ¶ 25, citing *Langford*; *Hodge*; *Davis*; *Dolly*. Whiplash and other "soft tissue" injuries from a motor vehicle accident involve the internal complexities of the body, thereby initiating a change in the evidential progression where medical testimony moves from matters within common knowledge and within layman competency to those areas where expert testimony is more appropriate and necessary for the trier of fact to understand the nature and cause of the injuries alleged. *Id.* at ¶ 24, citing *Wright*.

{¶ 36} Moreover, the trial court gave Pietrangelo several opportunities to comply with the court's case management orders and rules, yet Pietrangelo failed to comply. In ruling on Pietrangelo's motion for protective order and in camera review and a motion for reconsideration of prior order and consideration of medical authorizations at issue, the court noted that after he produced the documents, he could file a motion in limine seeking to have certain records or information excluded or redacted at trial. However, Pietrangelo never submitted the documents. Subsequently, the trial court granted Hudson's five motions in limine that were filed before trial.

{¶ 37} The court found that Pietrangelo's brother, Dr. Lee A. Pietrangelo, could not testify as a witness because Pietrangelo's failure to comply with the Ohio

Rules of Civil Procedure and the court's local rules. With regard to the amounts accepted as full payment by Pietrangelo's medical providers for medical bills, the court noted that the case will be submitted to jury based on original amounts billed. If the jury verdict was favorable to Pietrangelo, the court ordered that additional questions would be presented as to whether the medical bills should be reduced to the amount accepted in the insurance payments. The court also precluded Pietrangelo from introducing: (1) any testimony, records, or statements concerning insurance available; (2) evidence regarding lost time, wages, or income as a result of the accident; and (3) evidence of any medical bill for which a corresponding medical record was not produced and any medical record or bill not produced in discovery.

{¶ 38} Because Pietrangelo's injuries are not sufficiently observable, understandable, and comprehensible by the trier of fact, expert medical testimony was required to establish proximate cause of the alleged injuries in this instance. Moreover, expert testimony was necessary so the jury did not speculate as to what injuries resulted from the accident separately from his preexisting injuries. *See Rice v. Johnson*, 8th Dist. Cuyahoga No. 63648, 1993 Ohio App. LEXIS 4109, 8-9 (Aug. 26, 1993) ("'Expert testimony is required so that the trier of fact does not have to speculate on the standard of care, particularly in a complex case involving ["soft tissue" injuries] which are normally not within the realm of understanding of the layman.'" *Id.*, quoting *Northwestern Life Ins. Co. v. Rogers*, 61 Ohio App.3d 506, 512, 573 N.E.2d 159 (10th Dist. 1989). Pietrangelo could not present any expert medical testimony with respect to this issue, and therefore, he was unable to sustain

his negligence cause of action. As a result, we find that the trial court properly granted directed verdict in Hudson's favor.

{¶ 39} Accordingly, the second assignment of error is overruled.

## III. Conclusion

{¶ 40} The trial court properly denied Pietrangelo's motion for summary judgment because disputed facts, including prior injuries, precluded summary judgment, and Pietrangelo failed to support his claim with any expert opinions. The trial court's granting of Hudson's motion for directed verdict was also proper. Pietrangelo failed to comply with the trial court's local rules and the rules of civil procedure. In addition, Pietrangelo was unable to sustain his negligence action because his injuries required expert testimony to show proximate cause and he could not present any expert medical testimony with respect to this issue.

{¶ 41} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.


_____
MARY J. BOYLE, JUDGE

ANITA LASTER MAYS, A.J., and
EILEEN A. GALLAGHER, J., CONCUR